**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATTHEW KIRSCHNER, *et al.*,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | **NO.  23-993** |
| | : | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | : | |
| | : | |
| *Defendant.* | : | |

<u>**MEMORANDUM OPINION**</u>

**Goldberg, J.**                                                                                      **October 31, 2023**

Plaintiffs Matthew Kirschner and Jennifer Kirschner, husband and wife, bring breach of contract and bad faith claims against Defendant State Farm Fire and Casualty Company.  Plaintiffs' claims arise out of Defendant's alleged failure to pay sufficient value under Plaintiffs' homeowner's policy for a loss suffered on their home.  Pursuant to several subsections of Federal Rule of Civil Procedure 12, Defendant moves to dismiss the bad faith claim and part of the breach of contract claims and seeks to strike certain allegations from the Complaint.  For the following reasons, I will grant the Motion in part and deny it in part.

## I.     FACTS SET FORTH IN THE COMPLAINT

The following facts are set forth in the Complaint.[1]

---

[1]      In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  <u>Atiyeh v. Nat'l Fire Ins. Co. of Hartford</u>, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Plaintiffs purchased a comprehensive homeowners' insurance policy (the "Policy") from Defendant to insure their home and personal property located at 948 Avenue F, Langhorne, PA 19047 (the "Insured Premises").  (Compl. ¶¶ 1–3, 6–7.)

On March 24, 2022, while the Policy was in full force and effect, there was a fire in an upstairs bathroom on the Insured Premises, resulting in both fire damage and water damage from third-party fire mitigation efforts.  Plaintiffs allege that the Insured Premises suffered a loss in excess of some of the coverage limits.  (Id. ¶ 8.)

On the same date, Plaintiffs reported their insured property damage claims to Defendant. According to Plaintiffs, the losses are such that, absent repair and remediation, the Insured Premises are inhabitable.  Defendant, however, has repeatedly denied the payment of full coverage, despite proof of the loss being supplied by Plaintiffs.  As such, Plaintiffs have been unable to rebuild the Insured Premises.  (Id. ¶¶ 10–15, 22.)

On February 7, 2023, almost one year after the loss, Plaintiffs filed suit in the Bucks County Court of Common Pleas, setting forth the following claims: (1) breach of contract (dwelling); (2) breach of contract (other structures); (3) breach of contract (personal property); (4) breach of contract (loss of use); (5) breach of contract (generally); and (6) bad faith.  Defendant removed the case to federal court and filed the current Motion to Dismiss and/or Strike.

## II.    MOTION TO STRIKE

### A.    Standard of Review

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  Content is immaterial when it "has no essential or important relationship to the claim for relief."  Donnelly v. Commonw. Fin. Sys., No. 07-cv-1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008) (quoting Del. Healthcare, Inc. v. MCD Holding Co., 893 F. Supp. 1279,

1291–92 (D. Del. 1995)).  Content is impertinent when it does not pertain to the issues raised in the complaint.  Id.  Scandalous material "improperly casts a derogatory light on someone, most typically on a party to the action."  Id. (citing Carone v. Whalen, 121 F.R.D. 231, 233 (M.D. Pa. 1988)).

 "The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'"  Steak Umm Co., LLC v. Steak'Em Up, Inc., No. 09-cv-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009) (citing Johnson v. Anhorn, 334 F. Supp.2d 802, 809 (E.D. Pa. 2004)).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).  Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."  Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 615 (E.D. Pa. 2015) (quoting River Road Dev. Corp. v. Carlson Corp., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).

 **B.  Motion to Strike Demands for Attorneys' Fees in Counts I–V**

 Defendant first seeks to strike Plaintiffs' demand for attorney's fees in connection with their breach of contract claims.  "A demand for damages that is not recoverable as a matter of law may be stricken pursuant to Rule 12(f)."  Rivera v. Dealer Funding, LLC, 178 F. Supp. 3d 272, 281 (E.D. Pa. 2016).  Pennsylvania law does not allow awards for attorney's fees in suits for ordinary breach of contract "unless there is express statutory authorization, a clear agreement of the parties[,] or some other established exception."  McMullen v. Kutz, 985 A.2d 769, 775 (Pa. 2009).  Where a court can determine from the face of the complaint that a plaintiff cannot recover attorneys' fees,

such a request may be stricken.  <u>See, e.g.</u>, <u>Berger v. Hahnemann Univ. Hosp.</u>, No. 17-cv-2295, 2017 WL 5570340, at *9 (E.D. Pa. Nov. 17, 2017), <u>aff'd</u>, 765 F. App'x 699 (3d Cir. 2019); <u>Craker v. State Farm Mut. Auto. Ins. Co.</u>, No. 11-cv-225, 2011 WL 1671634, at *5 (W.D. Pa. May 3, 2011).

Here, the claims at issue are based on an insurance contract, which does not allow for the recovery of attorney's fees.  Indeed, Plaintiffs do not address, let alone oppose, the Motion to Strike the demand for attorneys' fees.  Absent articulation of any basis upon which attorney's fees may be awarded, I will strike this demand from the Complaint.

### C.  <u>Motion to Strike Paragraphs 5, 50(o), 51, and 52</u>

Defendant next moves to strike several paragraphs from the Complaint.  I address them individually:

i.  <u>Paragraph 5</u>:

Paragraph 5 of the Complaint states: "At all times relevant Plaintiffs were without contributory negligence, comparative negligence, and/or other wrongful conduct."

Defendant contends that this paragraph refers to contributory and comparative negligence, neither of which pertains to a breach of contract action.  Plaintiffs do not oppose the Motion.  As Defendant is correct that the concepts of contributory and comparative negligence have no relevance to a breach of contract and bad faith action, I will strike this paragraph.

ii.  <u>Paragraph 50(o)</u>

Paragraph 50(o) of the Complaint states: "Defendant, acting through its duly authorized agents, servants, workmen, employees and/or representatives, including but not limited to Brandon Freeman, has engaged in bad faith conduct toward Plaintiffs, through the following acts and omissions, but not limited to these acts and omissions: . . . [i]ntentionally issuing an insurance policy to Plaintiffs that is insufficient to fully cover Plaintiffs' losses."

Defendant contends that this alleged conduct does not state a case for bad faith since the bad faith statute does not extend to conduct by an insurer that is unrelated to the denial of the claim for benefits.  Plaintiffs again offer no response.

 "[T]he essence of a bad faith claim [is] the unreasonable and intentional (or reckless) denial of benefits."  UPMC Health Sys. v. Metro Life Ins. Co., 391 F.3d 497, 505 (3d Cir. 2004).  Although courts applying Pennsylvania law have extended bad faith beyond mere denial of claims, the cases all involve bad faith claims related to specific conduct of the insurer following issuance of a policy. Mitch's Auto. Serv. Ctr., Inc. v. State Auto. Mut. Ins. Co., No. 10-cv-3413, 2011 WL 5042480, at *7 (E.D. Pa. Oct. 24, 2011).  A claim that the drafting of the policy language itself was in bad faith is not actionable under Pennsylvania law.  Id.; see also Sewell v. Liberty Life Ins. Co., No. 11-cv-1721, 2012 WL 1424879, at *4 (M.D. Pa. Apr. 25, 2012) (holding that § 8371 applies to the bad faith handling or payment of claims or benefits under an insurance policy and does not apply to a dispute over contract terms).

As Plaintiffs have failed to identify any authority allowing a bad faith claim premised on the drafting of the insurance policy, I will strike this allegation.

       iii.  Paragraph 51

Paragraph 51 of the Complaint states: "Defendant's claims handling is part of a general business practice and course of conduct involving multiple violations of Pennsylvania statutory law and/or Insurance Regulations."

Defendant seeks to strike this claim, alleging that it bears no relevance to its conduct in this particular matter.  Defendant asserts that this paragraph of the Complaint simply is "an attempt to smear the reputation and character of Defendant, and to improperly sway the jury."  (Def.'s Mot. to Dismiss 18.)

Although Plaintiff has not offered a response to this argument, I find no basis to strike the allegation. In Pennsylvania, to succeed on a bad faith claim, a plaintiff-insured must prove (1) that the insurer did not have a reasonable basis for denying benefits under the policy, and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. Northwestern Mut. Life. Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). Allegations that Defendant has engaged in a general business practice of violating state insurance law could be relevant to Plaintiffs' assertion that Defendants were on notice regarding criticized claims handling practices that underscore the bad faith claim here. See Zaloga v. Provident Life & Acc. Ins. Co. of Am., 671 F. Supp. 2d 623, 634 (M.D. Pa. 2009). In turn, such evidence would bear on proof that Defendant knew or recklessly disregarded its lack of a reasonable basis in denying the claim.

Ultimately, such evidence may not be admissible at a trial. See Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co., 29 F. App'x 823, 827–28 (3d Cir. 2002) (holding that expert testimony regarding insurer's violation of statutes in handling insured's claim for underinsured motorist benefits was more prejudicial than probative in bad faith action and, thus, was not admissible). Nonetheless, at this stage of the litigation, such allegations are not irrelevant, immaterial, impertinent, or scandalous.

      iv.  Paragraph 52:

Paragraph 52 of the Complaint provides: "As a direct and proximate result of the acts of Defendant as alleged in each count of this Complaint, Plaintiffs have suffered sustained aggravation and inconvenience, emotional distress, anger, anguish, chagrin, depression, disappointment, embarrassment, fear, fright, grief, horror, loss of use of insurance benefits, loss of use of the premises, and/or humiliation."

Defendant contends that the damages sought in paragraph 52 are not recoverable in either a breach of contract action or a statutory bad faith action. Plaintiffs offer no response.

It is well settled that emotional distress damages are not recoverable in a bad faith action. See, e.g., Watson v. Nationwide Mut. Ins. Co., No. 11-cv-1762, 2011 WL 4894073, at *3 (E.D. Pa. Oct. 12, 2011); Hrobuchak v. Nationwide Prop. & Cas. Ins. Co., No. 03-cv-0591, 2004 WL 3333124, at *5 (M.D. Pa. Sept. 24, 2004); Krisa v. The Equitable Life Assurance Society, 109 F. Supp. 2d 316, 323 (M.D. Pa. 2000). Further, as a general rule, a plaintiff "may not ordinarily recover emotional distress damages arising from a breach of contract." Krisa, 109 F. Supp. 2d at 323 (quotation and citation omitted). Although such damages "may be recoverable on a contract where . . . 'the breach is of a kind that serious emotional disturbance was a particularly likely result,'" Johnson v. State Farm Life Ins. Co., 695 F. Supp. 2d 201, 212 (W.D. Pa. 2010), this narrow exception is not implicated by any of the allegations in the Complaint. See Pratts v. State Farm Fire & Cas. Co., No. 16-cv-2385, 2017 WL 4151182, at *7 (M.D. Pa. Sept. 19, 2017) (striking references to emotional/physical discomfort and humiliation in breach of homeowners insurance contract and bad faith claim). Accordingly, claims for emotional distress damages in paragraph 52 shall be stricken.

## III.  MOTION TO DISMISS

### A.  Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679)  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal, 556 U.S. at 679).

### B.  Bad Faith Claim (Count VI)

The Pennsylvania legislature has created a statutory remedy for an insurer's bad faith conduct:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.

To establish bad faith under 42 Pa.C.S. § 8371, a plaintiff must demonstrate that the insurer (1) lacked a reasonable basis for denying benefits and (2) knew or recklessly disregarded its lack of

a reasonable basis.  Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1999)).  In the insurance context, bad faith denotes a "frivolous or unfounded" refusal to pay policy proceeds, which imports a dishonest purpose and a breach of a known duty, such as good faith and fair dealing.  Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994) (quotations omitted).  It is not necessary that the refusal be fraudulent; "an unreasonable interpretation of the policy provisions as well as a blatant misrepresentation of the facts or policy provisions will support a bad faith claim."  Smith v. Allstate Ins. Co., 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) (quotations omitted); see also O'Donnell ex rel. Mitro v. Allstate Ins. Co., 734 A.2d 901, 905 (Pa. Super. Ct. 1999).  To defeat a claim of bad faith an insurer need not show that it was correct.  Rather, an insurer must demonstrate that it had a reasonable basis for its decision to deny benefits.  See J.C. Penney Life Ins. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004); see also Leach v. Nw. Mut. Ins. Co., No. 01-cv-2364, 2005 WL 3533116, at *11 (W.D. Pa. Dec. 22, 2005).

Actions constituting bad faith are not limited solely to a denial of coverage but may also include "a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, or failure to promptly acknowledge or act on claims."  Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc., 423 F. Supp. 3d 139, 154–55 (W.D. Pa. 2019) (citing Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999)).  Bad faith may occur "when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue."  Hamm v. Allstate Prop. & Cas. Ins. Co., 908 F. Supp. 2d 656, 672 (W.D. Pa. 2012) (quoting Coreh Constr. Co. v. Assurance Co. of Am., 64 Pa. D. & C.4th 496, 516 (Pa. Commw. Ct. 2003)).

At the pleading stage, a plaintiff states a sufficient claim if the complaint avers basic facts regarding the insurance policy, loss, and denial of the claim, as well as allegations that the insurer

acted unreasonably.  See Scarpato v. Allstate Ins. Co., No. 05-cv-5520, 2007 WL 172341, at *5 (E.D. Pa. January 23, 2007) (holding that complaint sufficiently pled a bad faith claim under the federal notice pleading requirement where complaint alleged that insurance company failed to conduct a reasonable investigation and asserted policy defenses without a reasonable basis); Mezzacappa v. State Farm Insurance Company, No. 04-cv-5249, 2004 WL 2900729, at *1–2 (E.D. Pa. Dec. 14, 2004) (holding that plaintiff's allegations that the insurer's denial was unreasonable, lacked sufficient bases, and violated the terms of the insurance contract was sufficient to state a bad faith claim).

Relying on several cases dismissing bad faith claims at the pleading stage, Defendant contends that the Amended Complaint fails to provide factual support from which the Court can conclude that the bad faith standard was met.  In all of those cited cases, however, the complaints offered nothing more than "boilerplate" conclusory allegations that did not provide a factual basis for an award of bad faith damages.  See, e.g.,  Clapps v. State Farm Fire & Cas. Co., 447 F. Supp. 3d 293, 300 (E.D. Pa. 2020) (dismissing bad faith claim where plaintiff alleged that defendant "fail[ed] to complete a prompt and thorough investigation of Plaintiff's claim" and "fail[ed] to promptly provide a reasonable factual explanation of the basis for the denial of Plaintiff's claim" without any explanatory facts); Shetayh v. State Farm Fire & Cas. Co., No. 20-cv-693, 2020 WL 1074709, at *1 (E.D. Pa. Mar. 6, 2020) (dismissing without prejudice bad faith claim where complaint alleged insurer failed to investigate and evaluate plaintiff's claim, failed to timely pay the covered loss, asserted policy defenses without a basis, misrepresented pertinent facts or policy provisions, failed to keep plaintiffs advised as to the status, unreasonably valued the loss, failed to provide a reasonable explanation for the denial, and required plaintiff to institute a lawsuit); Cappuccio v. State Farm Fire & Cas. Ins. Co., No. 19-cv-3025, 2020 WL 2307340, at *1 (E.D. Pa. May 8, 2020 (same); MBMJ Props, LLC v. Millville Mut. Ins. Co., No. 18-5071, 2019 WL 1651667,

at *1–2 (E.D. Pa. Apr. 18, 2019) (same); <u>Mozzo v. Progressive Ins. Co.</u>, No. 14-cv-5752, 2015 WL 56740, at *3 (E.D. Pa. Jan. 5, 2015) (dismissing bad faith claim where plaintiff alleged that he complied with all relevant requests relating to the investigation of his insurance claim, but defendant arbitrarily and capriciously failed to honor its contractual obligations); <u>Blasetti v. Allstate Ins. Co.</u>, No. 11-cv-6920, 2012 WL 177419, at *4 (E.D. Pa. Jan. 23, 2012) (dismissing bad faith claim where complaint alleged that "[d]efendant, despite demand for benefits under its policy of insurance has failed and refused to pay to Plaintiffs those benefits due and owing under said policy of insurance" and defendant "recklessly disregard[ed] its lack of reasonable basis when it denied Plaintiffs' claims."); <u>Atiyeh v. Nat'l Fire Ins. Co. of Hartford</u>, 742 F. Supp. 2d 591, 599 (E.D. Pa. 2010) (dismissing bad faith claim that alleged that defendant reasonably failed to indemnify plaintiff for loss, failed to conduct a reasonable investigation, denied benefits without a reasonable basis, and asserted policy defenses without a reasonable basis); <u>Eley v. State Farm Ins. Co.</u>, No. 10-cv-5564, 2011 WL 294031, at *4 (E.D. Pa. Jan 31, 2011) (dismissing bad faith claim where plaintiffs alleged that insurer failed to negotiate in good faith, failed to properly investigate, and such other acts to be shown through discovery).

Here, by contrast, the Complaint goes beyond such boilerplate allegations and asserts that Defendant acted in bad faith by:

a. Not attempting in good faith to effectuate the prompt, fair, and equitable settlement of Plaintiffs' claim where defendant's statutory and contractual duty to do so is reasonabl[y] clear.

b. Purposefully underestimating and misrepresenting the extent of loss and damage suffered for the sole purpose of depriving Plaintiffs of benefits owed under the Policy;

c. Forwarding correspondence to Plaintiffs and Plaintiffs' representatives according to multiple policy provisions and exclusions which knowingly did not apply to the facts and circumstances of this case in an attempt to obfuscate the issues and intimidate Plaintiffs into accepting a settlement of their claim for far less than they knew it was worth, including but not limited to, an August 5, 2022 letter in which they unreasonably

and unlawfully denied coverage for Plaintiffs' cabinets, left side gate, condensing unit, and front door porch;

d.  Sending communications to Plaintiffs and Plaintiffs' representatives on or about June 16, 2022, in which they threatened to terminate Plaintiffs' living expense coverage, when they knew that the premises had not been repaired or restored by falsely asserting that Plaintiffs or their representatives were responsible for the delays in repairing or restoring the premises.

e.  Purposefully sending the living expenses payments to Plaintiffs on the second (2nd) day of each month (or later) when they knew or should have known that Plaintiffs' monthly rental payment was due on the first (1st) day of each month;

f.  Purposefully causing hardship and delays because they thought that Plaintiffs' representative was from a different public adjustment agency with which they have animosity toward;

g.  Failing to respond to Plaintiffs' claim for benefits within a reasonable period of time;

h.  Failing to adequately investigate Plaintiffs' claims for benefits, including but not limited to, only spending about two (2) hours inspecting the property prior to denying and otherwise limiting their claims when they knew or should have known that this claim required far more inspection time to provide an accurate estimate;

i.  Failing to perform any further investigation after knowing that their estimates and Plaintiffs' representatives' estimates were very different;

j.  Failing to timely provide a reasonable explanation of the basis for the denial of Plaintiffs' claim for benefits;

k.  Failing to objectively and fairly evaluate Plaintiffs' claims;

l.  Asserting Policy defenses without a reasonable basis in fact;

m.  Flatly misrepresenting pertinent facts or policy provisions relating to coverages at issue and placing unduly restrictive interpretations on the Policy and/or claim forms;

n.  Failing to provide a reasonable factual explanation of the basis for the denial of Plaintiffs' claim;

o.  [THIS PARAGRAPH STRICKEN *SUPRA* PURSUANT TO FRCP 12(f)]

p.  Maximizing profit to Plaintiffs' detriment;

q.  Acting unreasonably and unfairly in response to Plaintiffs' claims;

r.   Intentionally delaying the resolution of this claim to force Plaintiffs to accept an amount that is far less than their claim is worth;

s.   Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

t.   Failing to promptly provide a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for denial of claim or for the offer of a compromise settlement;

u.   Failing to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented;

v.   Concealing from first party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages or other provisions are pertinent to a claim;

w.   Compelling insured to seek legal redress by forcing Plaintiffs to commence the within civil action to recover benefits to which they were and are entitled; and

x.   Other acts and omissions by Defendant to be revealed during the discovery process.

(Compl. ¶ 50.)

While many of the allegations in this paragraph (*e.g.*, subparagraphs (a), (b), (g) and (j)–(x)) constitute boilerplate claims that, standing alone, fail to state a bad faith claim, multiple other allegations in the paragraph—particularly those in subparagraphs (c), (d), (e), (f), (h), and (i)[2]— move this claim from mere possibility to plausibility, as required under Iqbal. Indeed, unlike many of the cases cited by Defendant, the Complaint here provides a specific explanation of how Defendant failed to properly investigate the claim and describes specific communications from Defendant. Such allegations, if substantiated, could provide a sufficient basis for a factfinder to infer that Defendant lacked a reasonable basis for denying benefits and recklessly disregarded such lack of a reasonable basis. Accordingly, I decline to dismiss the bad faith claim at this time.

---

[2]   Defendant contends that these allegations are conclusory because Plaintiffs do not provide additional details describing exact time periods or specific dates. This argument, however, disregards the fact that Federal Rule of Civil Procedure 8(a) still requires only a short and plain statement of claim showing that the pleader is entitled to relief. More particularized pleading, as required by Federal Rule of Civil Procedure 9, is reserved for claims of fraud or mistake, neither of which are at issue here.

### C. <u>Breach of Contract (Generally) Claim (Count V)</u>

As set forth above, Plaintiffs bring five breach of contract claims related to denial of coverage for their dwelling loss (Count I), the denial of coverage for other structures on their property (Count II), the denial of coverage for their personal property (Count III), the denial of coverage for the loss of use of their premises (Count IV), and for breach of contract "generally" (Count V).  In the last claim for breach of contract generally, Plaintiffs simply repeat all of the allegations set forth in support of their bad faith claim.  Defendant moves to dismiss this cause of action as an attempt to recast the bad faith claim as a breach of contract claim.

I agree with Defendant that Count V is akin to a common law bad faith claim and duplicative of the allegations in Count V (statutory bad faith).  "Where, as is the case here, a common law bad faith claim is incorporated through a separately plead breach of contract claim, Pennsylvania law does not recognize a common law bad faith claim.  <u>McDonough v. State Farm Fire and Cas. Co.</u>, 365 F. Supp. 3d 552, 558 (E.D. Pa. 2019) (citations omitted).  Rather, the bad faith claim sounding in contract is subsumed within the remaining breach of contract claims.  <u>Tubman v. USAA Cas. Inc. Co.</u>, 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013).  In such cases, where the relief requested in a breach of contract claim is based on an insurer's failure to act in good faith under the insurance contract, the claim must be dismissed as redundant of the breach of contract claim.  <u>Ross v. Metro. Life Ins. Co.</u>, 411 F. Supp. 2d 571, 583 (W.D. Pa. 2006); <u>see also</u> <u>Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.</u>, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) (holding that a "plaintiff cannot maintain a breach of the implied covenant of good faith and fair dealing claim that is duplicative of its breach of contract claim"); <u>Vehl v. State Farm Fire & Cas. Co.</u>, No. , 21-cv-10112, 2021 WL 6062304, at *3 (D.N.J. Dec. 22, 2021) (holding that where a breach of the implied covenant of good faith and fair dealing claim lacks a distinct factual predicate, courts may dismiss them at the motion to dismiss stage).

Plaintiffs' Count V claim for breach of contract lacks a distinct factual predicate separate from the statutory bad faith claim.  Accordingly, it fails to state a plausible claim for relief and must be dismissed.

### D.  <u>Breach of Contract (Loss of Use) Claim (Count IV)</u>

Finally, Defendant moves to dismiss Count IV of the Complaint alleging breach of contract in relation to Defendant's alleged failure to cover Plaintiffs' damages for loss of use of their property.  Specifically, Plaintiffs allege that the Policy at issue provided coverage for Plaintiffs' Loss of Use in the amount of $95,190.00.  As a result of the March 24, 2022 loss and the resulting uninhabitability of the Insured Premises, Plaintiffs contend that they presently having ongoing living expenses of $5,314.63 ($3,370 for renting a temporary home and $1,945.39 for rental of temporary furniture).  According to Plaintiffs, Defendant has refused to timely pay these living expenses each and every month and has, on numerous occasions, threatened to stop providing these payments despite the remaining uninhabitability of the Insured Premises due to Defendant's refusal to cover repairs.

Defendant asserts that these allegations fail to state a plausible claim for relief.  The Policy provides that "[w]hen a loss insured causes the residence premises to become uninhabitable, we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months."  (Def.'s Mot. to Dismiss, Ex. B.)  Defendant claims that Count IV "does not provide any facts indicating the amount of costs incurred by Plaintiffs and not paid for by Defendant."  (<u>Id.</u> at 15.)

Defendant admits that the Policy at issue provides coverage for living expenses when the Insured Premises are uninhabitable.  Plaintiffs properly allege that they have incurred additional living expenses as a result of the fact that the Insured Premises are uninhabitable and remain so due to Defendant's failure to pay out on the covered losses to the property.  Plaintiffs also contend that

Defendant has not timely and fully provided coverage for living expenses in the amounts of $5,314.63 per month.   Such allegations are sufficient to plead a breach of contract claim. Accordingly, I will deny this portion of Defendant's Motion.

## IV.   CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss is granted in part and denied in part. An appropriate Order follows.